# Richmond.

COMMONWEALTH v. GOODWIN.

March 18, 1909.

1. APPEAL AND ERROR—*Criminal Law—Appeal by State—Revenue Cases.*—Where the defence to a prosecution for the unlawful sale of malt liquor is that the defendant had the right to sell it at the place where sold, under the revenue laws of the State, the case involves "a violation of a law relating to the State revenue" within the provisions of section 88 of the Constitution, and section 4051 of the Code, and an appeal lies on behalf of the Commonwealth.

2. INTOXICATING LIQUORS—*Meaning of "Malt Liquors."*—The general term "malt liquors" includes both intoxicating and non-intoxicating malt liquors, and if a statute specifically forbids the unlicensed sale of malt liquors, the question of the intoxicating properties of the liquor is immaterial.

3. INTOXICATING LIQUORS—*Byrd Law—"Malt Beverage"—Compliance With General Law—Violation of Local Charters.*—Where the charter of a town provides that no license shall be granted to any person, club or corporation to sell ardent spirits, malt liquors or any mixture thereof without the written consent of the council of the town and compliance with other provisions of the charter of the town, a brewing company, although it has complied with all the provisions of section 28 1-2 of the Byrd liquor law, is not authorized to sell "malt beverage" in said town through an agent located and doing business there, except with the written consent of the council of the town and a compliance with the other provisions of its charter. Section 28 of the Byrd law expressly provides that nothing in the act shall be construed as changing the provisions of the charter of any town or city touching the granting of license. An agent of such brewing company who has failed to obtain license in said town, and who makes sale of "malt beverages" therein is liable to the penalties prescribed for his default.

Error to a judgment of the Circuit Court of Prince William county.

*Reversed.*

The opinion states the case.

*Attorney General Wm. A. Anderson* and *Robert A. Hutchinson,* for the Commonwealth.

*S. G. Bent* and *Julien Gunn,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

The defendant in error, Wade Goodwin, was convicted by a justice of the peace of Prince William county of unlawfully selling "malt liquor," or a mixture thereof, in the town of Manassas.

Upon appeal to the circuit court of that county, the whole matter of law and fact being by agreement submitted to the court, there was a judgment in favor of the accused. To that judgment this writ of error was awarded on the petition of the Commonwealth.

Upon the calling of the cause, the defendant moved the court to dismiss the writ of error as improvidently awarded, upon the ground that this is a prosecution for the violation of the "local option" law of the State, and not for a violation of the law relating to State revenue.

Whether or not a prosecution for the violation of the local option law, where there is no pretence that the sale for which the accused is prosecuted was made under a license authorizing it, need not be considered in this case. The defense of the accused in the circuit court, as appears from the facts agreed, was that he had the right to make the sale of "malt beverage," the article sold by him, and at the place where it was sold, under the revenue laws of the State. This is denied by the Commonwealth.

The question involved in the case would seem, therefore, to come clearly within the provisions of section 88 of the Constitution, and section 4051 of the Code, which confer jurisdiction upon this court to grant a writ of error upon the petition of the Commonwealth in a case for the "violation of a law relating to State revenue."

By section 23½ of chapter 189 of the Acts of 1908—Acts 1908, pp. 275-287—known as the Byrd law, it is provided:

"That 'malt beverage' within the meaning of this section shall be construed to be the product of a brewing plant, or brewery, and shall, as to its composition, comply with the standards now, or as may hereafter be prescribed by the pure food commissioner of the United States, but shall be non-intoxicating and in no event contain in excess of two and one-quarter *per cent.* in volume of alcohol.

"No person, firm, or corporation shall manufacture 'malt beverage,' as herein defined, except subject to the provisions of this act.

" 'Malt beverage' shall be manufactured only by some person, firm or corporation having a manufacturer's malt liquor license, and who shall, before manufacturing the same, pay an additional special license tax of two hundred and fifty dollars ($250.00) per year, and execute a bond in the penalty of ten thousand dollars ($10,000) before and with security (either personal or corporate) approved by the judge of the circuit or corporation court of the county or city in which such manufacturing is proposed to be done; the condition of said bond shall be to faithfully comply with the provisions of this act.

" 'Malt beverage' shall be sold by the manufacturer direct to the consumer (not to be drunk where sold) and in quantities of not less than one-half dozen bottles, nor more than four dozen bottles at any one time, and shall not be sold or offered for sale by any other person, firm or corporation. 'Malt beverage' shall be sold only in bottles in which shall be blown, in letters at least one-half inch in height, the name and address of the manufac-

turer, and the words 'malt beverage.' No person, firm or cor-
poration shall place in such bottles and sell or otherwise transfer
any liquid containing alcohol in excess of two and one-quarter
*per cent.* in volume.

"Any person violating any of the provisions of this section
shall, upon conviction thereof, be fined not less than five hun-
dred dollars, nor more than one thousand dollars, or, in the dis-
cretion of the jury, confined in jail for not less than three
months, nor more than twelve months for each offense."

By the facts agreed, it appears that the "malt beverage" sold
by the defendant answered the description of that article as
defined by that section, was sold directly to the consumer, not
to be drunk where sold, in quantities of six bottles, with the
name and address of the Robert Portner Brewing Company, of
Alexandria, the manufacturer, blown into each bottle one-half
inch in height; that the defendant was acting as the agent of
said brewing company in the town of Manassas, which had a
license as a manufacturer of malt liquors and had paid the addi-
tional special tax and had given the bond required in order to
entitle it to manufacture and sell "malt beverage," and except
a State tax of $5.00 and a town tax of $2.50 for a merchant's
license, neither the said brewery nor the defendant had paid
any license in the said town or county.

Upon the facts agreed, the guilt or innocence of the accused
depends upon the question, whether a compliance with all the
provisions of section 23½ of the said act in all respects authorizes
the brewing company to sell "malt beverage" in the town of
Manassas through an agent located and doing business in that
town.

Several grounds are relied on by the attorney general to
sustain his contention that the brewing company had no such
right; but in the view we take of the case it is only necessary
to consider one of them.

By section 14 of the charter of Manassas (Acts 1901-2, p.
216; Acts 1906, p. 204), it is provided, that "no license shall

be granted to any person, club or corporation to sell ardent spirits, malt liquors, or any mixture thereof, or any bitters containing alcohol, either by wholesale or by retail, or to be drunk at the place where sold, within the corporate limits of said town, unless the applicant shall first produce before the court authorized to grant such license the written consent of the town council that the applicant is a corporation under the laws of some State of the United States, or that the person is sober, discreet and of good moral character, and that the place is suitable and convenient, and such certificate shall further show that the said applicant has paid into the town treasury a sum not less than seventy-five dollars nor more than the sum of three hundred dollars, as shall be prescribed by the said council * * *."

By section 28 of chapter 189 of the Acts of 1908, it is provided, that nothing in this act shall be construed as changing the provisions of the charter of any town or city touching the granting of licenses.

If "malt beverage" be a malt liquor or a mixture thereof, then under the provisions of the charter of the town of Manassas no license could be granted for its sale therein except with the consent of the town council and a compliance with the other provisions of the charter. That there was no such compliance is clear from the facts agreed. While "malt beverage" as defined by section 23½ of the Byrd law is not intoxicating, it is a malt liquor. It seems to be well settled that the general term "malt liquors" includes both intoxicating and non-intoxicating malt liquors.

Black, in his article on Intoxicating Liquors in 23 Cyc. 41, 60, says, that "if the statute specifically forbids the unlicensed sale of malt liquors, the question of the intoxicating properties of the liquor sold is immaterial; it is only necessary to determine whether it was a malt liquor." *Eans* v. *State*, 113 Ga. 749, 39 S. E. 318, 321.

See also the following cases, where it was held that if the law prohibits or regulates the sale of "cider" by name, without

any qualifying word, it applies to all cider, without regard to its intoxicating qualities. *Com.* v. *Dean,* 14 Gray (Mass.) 99; *State* v. *Roach,* 75 Maine, 123; *State* v. *Spalding,* 61 Vt. 505, 17 Atl. 844.

In *State* v. *Kauffman,* 68 Ohio, 635, 67 N. E. 1062, it was held that a malt beverage which contained less than two and one-quarter *per cent.* of alcohol, and which was not intoxicating, was embraced within the meaning of an act which related to trafficking in spiritous, vinous, malt and intoxicating liquors. See *U. S.* v. *Ducournau* (C. C.), 54 Fed. 138, 139; *U. S.* v. *Cohen,* 2 Ind. Ter. 475, 52 S. W. 38.

"Malt beverage" being a malt liquor, within the meaning of the charter of the town of Manassas forbidding its sale without a license acquired in the manner prescribed by the charter, the accused had no right to sell it in that town, even if the effect of section 30 of the Byrd law, as contended by the counsel of the defendant, were to repeal section 587 of the Code, so far as it forbids the sale of "malt beverage" in no-license territory.

It is insisted by the defendant that section 23½ of the act known as the "Byrd law" is unconstitutional. If it were, the result in this case would be the same, since he is not convicted of the violation of any of its provisions.

The judgment of the circuit court must, therefore, be reversed, and this court will enter such judgment as the circuit court ought to have entered.

*Reversed.*